United States District Court
Southern District of Texas

**ENTERED**

June 29, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| JERRY LANCE PETTY, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:25-cv-00296 |
| | § | |
| CITY OF FREEPORT, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' motion to dismiss. *See* Dkt. 17. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be granted as to Plaintiff's federal claims and that the court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

## BACKGROUND[1]

This dispute arises from an adverse employment action. Plaintiff Jerry Lance Petty is the former City Manager for Defendant City of Freeport, Texas (the "City"). Defendant Jeffrey Michael Peña is a member of the City Council.

### A. PETTY'S EMPLOYMENT AGREEMENT

The City appointed Petty as City Manager on December 13, 2023, pursuant to a written employment agreement (the "Agreement") drafted by the City Attorney and approved by the City Council. The Agreement provides that the City employs Petty "as provided by the City Charter"; that Petty is "to perform the functions and duties specified in the City Charter"; and that he "may be removed at any time in accordance with the provisions of [the] Agreement and the City Charter." Dkt. 1-6 at 2.

Under the Agreement, the City may terminate Petty's employment in one of two ways: (1) without cause, upon "thirty (30) days prior written notice to City

---

[1] These facts are taken from Petty's complaint and its attachments. *See* Dkt. 1.

Manager"; or (2) for cause, upon "an affirmative vote of a super-majority of all members of the City Council" and "reasonable written notice." *Id.* at 3. The Agreement does not define what constitutes a super-majority vote. Additionally, the City Charter "requires only a majority" vote of the City Council to terminate Petty's employment. Dkt. 1 at 8. Petty is entitled to $50,000 in severance if he is terminated without cause. If he is terminated for cause, he is entitled only to "to all compensation and all accrued benefits . . . earned through the date of termination." Dkt. 1-6 at 3.

## B.    THE RECORDINGS

Petty attaches to his complaint a series of recordings between the parties regarding the events leading to this suit. Most relevant here are "recordings" that, according to Peña, "reflect a conspiracy" between Petty and the City's Chief of Police, Jennifer Howell, to murder Peña. Dkt. 1-14 at 6.

According to Petty, the Texas Rangers and Brazoria County District Attorney reviewed the audio recordings at issue and concluded "that the recording[s] reflected no threat." Dkt. 1 at 2. Both agencies presented their findings to Chief Howell, who informed Peña of the result of the agencies' investigations. Peña publicly rejected the agencies' conclusions and, beginning in June 2025, published excerpts of the recordings "on social media accounts branded as official City Council publications." *Id.* at 5. After Peña posted the audio recordings publicly, the Texas Rangers conducted a second investigation and again concluded that no credible threat had been made.

Within weeks of Peña publishing the recordings, several officers filed complaints against Chief Howell. In April 2025, at the direction of Mayor Jerry Cain and with the agreement of outside counsel, Petty suspended Chief Howell with pay pending an investigation. "The investigation of Chief Howell was closed with no finding of misconduct after the complaining officers withdrew their complaints on June 2, 2025." *Id.* at 7. That same day, Peña posted on his City-

branded Facebook page that Petty had illegally suspended Chief Howell. Peña also accused "Petty and other members of the City Council" of grift. *Id*. at 7–8.

### C.    PETTY'S TERMINATION AND AFTERMATH

On June 11, 2025, Peña convened a Special Meeting of the City Council to discuss Petty's employment. The Special Meeting's Agenda included an agenda item "to deliberate the employment, evaluation, discipline, or dismissal of the City Manager Lance Petty as related to the Investigation Report of Chief of Police Jennifer Howell," and stated that all related employment materials, evidence, and public records were "to be presented, discussed and considered." Dkt. 1-14 at 2. Petty did not attend the meeting. He believed the meeting was supposed to "be [an] ordinary policy debate" and claims to have "received no invitation or instruction to present evidence to clear his name." Dkt. 1 at 8. Petty also claims he was not given "a pre-termination opportunity to respond." *Id*. at 12.

The City Council has five members: four City Councilmembers and the Mayor. Prior to the vote, Mayor Cain asked the City Attorney about the Agreement's super-majority requirement. The City Attorney stated "[i]t doesn't matter" because "[t]he City Charter requires only a majority." *Id*. at 8. In a 3-1 vote,[2] the City Council terminated Petty's employment for cause, citing "insubordination, gross and willful negligence against the City as well as creating a hostile workplace, including evidence in recorded format reflecting assault against City Council and . . . recordings that reflect a conspiracy to commit a murder[] against a City Councilman." Dkt. 1-14 at 6.

After Petty's termination, the City's human resources department did not initially contest Petty's application for unemployment benefits, stating that Petty "had no disciplinary actions and received no notice" of termination. Dkt. 1 at 11. Later, however, Petty claims the City contacted the Texas Workforce Commission

---

[2] Councilmen Peña, Jarvis Davis, and Winston Rossow voted to terminate Petty. Mayor Cain voted against terminating Petty. Councilman George Matamoros was not present for the Special Meeting.

3

and stated that Petty had been terminated for "poor decisions" and "illegally suspending the Police Chief." *Id.* The Texas Workforce Commission ultimately determined that the City had fired Petty "for a reason that was not misconduct connected with the work" and awarded Petty unemployment benefits. Dkt. 1-18 at 2.

Because of Peña's social media posts and recordings, Petty has allegedly been denied the following employment opportunities: (1) City Administrator for the City of Clyde, Texas ($120,000/year); (2) City Manager for the City of Santa Fe, Texas ($120,000/year); (3) City Manager for the City of Llano, Texas; and (4) Assistant General Manager of the Brazosport Water Authority ($130,000/year). Petty ultimately accepted employment at Turbeville Construction, where he makes "less than 61%" of his City Manager salary, with no health, vision, or dental benefits. Dkt. 1-29 at 2.

Petty alleges that Peña has continued to "publish statements and videos to official-branded accounts, including statements characterizing Plaintiff as involved in serious criminal conduct." Dkt. 1 at 11. In August 2025, Peña filmed Petty's new place of employment, Turbeville Construction, and published posts on Peña's City-branded Facebook page, stating: "Well, it's probably because I just exposed Lance Petty for working at Tuberville Construction on some illegal grift. Very likely as I'm being told, he got hired by Tuberville Construction only after trying to sell the City Hall building to them for one dollar." *Id.* at 10.

On September 15, 2025, Petty instituted this lawsuit against Defendants. Petty asserts the following claims against the City: (1) Procedural Due Process–Property Interest in Employment under 42 U.S.C. § 1983; (2) Procedural Due Process–Liberty Interest/Name-Clearing under 42 U.S.C. § 1983; (3) First Amendment Retaliation Based on Protected Speech and Spousal Association; (4) Municipal Liability under 42 U.S.C. § 1983; and (5) Breach of Contract.

Petty also asserts the following claims against Peña: (1) Procedural Due Process–Property Interest in Employment under 42 U.S.C. § 1983; (2) Procedural

4

Due Process–Liberty Interest/Name-Clearing under 42 U.S.C. § 1983; (3) First Amendment Retaliation Based on Protected Speech and Spousal Association; (4) Defamation Per Se and Per Quod; (5) Tortious Interference with Prospective Relations; (6) Intentional Infliction of Emotional Distress; and (7) Ultra Vires. Defendants have moved to dismiss all claims.

## RULE 12(b)(6) MOTION TO DISMISS

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up).

When evaluating a Rule 12(b)(6) motion, I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### A.    PROCEDURAL DUE PROCESS BASED ON CONTINUING EMPLOYMENT

Petty claims that Defendants violated his procedural due process rights when they deprived him of his "property interest in continued employment" by terminating him without notice. Dkt. 1 at 12. There is one problem with this claim: Judge Jeffrey V. Brown has already interpreted the City of Freeport's charter and found that it does *not* confer a property interest in continued employment with the City that would give rise to a due process claim. *See Duncan v. City of Freeport*, No. 3:23-cv-255, 2024 WL 2819118, at *4 (S.D. Tex. Jan. 23, 2024) (addressing former City Attorney Christopher Duncan's claim that he had a property interest in continued employment with the City).[3]

The relevant language in *Duncan* was Freeport City Charter art. IV, § 4.06 (Nov. 17, 2020), which states that the City Attorney "shall hold his office at the pleasure of the City Council." Likewise, the city manager "may be removed at the will and pleasure of the city council." *Id.* § 4.01(a) (May 10, 2014).[4] Judge Brown also found that, to the extent any employment agreement with the City would suggest otherwise, the city charter controls. *See id.* Thus, nothing in the Agreement can create a constitutionally protected property interest where the city charter provides that Petty serves at the pleasure of the City Council. Because Petty has no

---

[3] Defendants' failure to discuss *Duncan* in their motion to dismiss, their reply brief, or their amended reply brief baffles me. But that is of no moment. "As a general rule, . . . the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties." *Century Sur. Co. v. Blevins*, 799 F.3d 366, 372 (5th Cir. 2015) (quotation omitted). "Fairness requires notice and the opportunity to be heard. This report is such notice. [Petty's] objections to this report, if any, are [his] opportunity to be heard." *Crosswell v. Rodriguez*, No. 4:22-cv-01105, 2023 WL 6206911, at *8 (S.D. Tex. Sept. 8, 2023) (cleaned up), *aff'd*, 120 F.4th 177 (5th Cir. 2024).

[4] "Though the City [charter] was never introduced into the record, [the court may] take judicial notice of it." *Matter of Waller Creek, Ltd.*, 867 F.2d 228, 238 n.14 (5th Cir. 1989). As for the other documents of which the City asks me to take judicial notice, I decline to reach the issue because consideration of those documents is unnecessary to determine the merits of Defendants' motion to dismiss.

property interest in continued City employment, his procedural due process claim based on property interest must be dismissed.

**B.    PROCEDURAL DUE PROCESS BASED ON NAME-CLEARING HEARING**

Petty also claims that Defendants violated his procedural due process rights when they infringed his liberty interest in his reputation by denying him a name-clearing hearing. The Fifth Circuit has articulated a seven-pronged test for stating such a claim:

> To succeed on [a] § 1983 claim for the denial of a name-clearing hearing, the employee must prove the following: [1] that he was discharged, [2] that defamatory charges were made against him in connection with the discharge, [3] that the charges were false, [4] that no meaningful public hearing was conducted pre-discharge, [5] that the charges were made public, [6] *that he requested a hearing in which to clear his name*, and [7] that the request was denied.

*Rosenstein v. City of Dallas*, 876 F.2d 392, 395–96 (5th Cir. 1989) (emphasis added), *opinion reinstated in part*, 901 F.2d 61 (5th Cir. 1990). Because Petty fails to allege the sixth prong—that he requested a name-clearing hearing—his procedural due process claim based on Defendants' failure to provide a name-clearing hearing must be dismissed.

Petty argues that: "To the extent a request for a name-clearing hearing is required, such request was excused by lack of notice and would have been futile in light of the City's reliance on the edited recording and Peña's publications." Dkt. 1 at 14. The Fifth Circuit recognizes no futility exception to the request requirement, and Petty cites none. It is black-letter law that a request for a name-clearing hearing is required. *See Campos v. Guillot*, 743 F.2d 1123, 1126 (5th Cir. 1984) ("[A] discharged public employee is entitled to a 'name-clearing' hearing before the governing body that discharged him whenever stigmatizing charges have been made in connection with his discharge, when no meaningful public hearing was conducted pre-discharge, *and when he requests such a hearing*." (emphasis added)). Petty points this court to no authority that would excuse the requirement that he request a name-clearing hearing. Because Petty does not allege that he

7

requested and was denied a name-clearing hearing, his procedural due process claim based on the denial of a name-clearing hearing necessarily fails and must be dismissed.[5]

## C. FIRST AMENDMENT RETALIATION BASED ON SPOUSAL SPEECH AND ASSOCIATION

Petty alleges that Defendants retaliated against him based on his "spouse's public speech and civic participation" in violation of his First Amendment rights of free speech and spousal association. Dkt. 1 at 15.

To state a First Amendment retaliation claim, Petty must allege: (1) "an adverse employment action"; (2) that the speech at issue "involved a matter of public concern"; (3) that the "interest in commenting on matters of public concern outweighs the [City]'s interest in promoting efficiency"; and (4) that the speech at issue "motivated the [City]'s adverse action." *Modica v. Taylor*, 465 F.3d 174, 180 (5th Cir. 2006). I will assume, for the sake of argument, that Petty's spouse's speech can give rise to Petty's First Amendment retaliation claim. Even so, Petty fails to state a claim. While Petty unquestionably suffered an adverse employment action, he fails to plead any of the remaining elements in more than a conclusory fashion.

Petty's claim fails because he fails to apprise the court of *what* his spouse said involving a matter of public concern. The allegation that Petty's spouse engaged in protected speech on matters of public concern is a legal conclusion, not a factual allegation. *See Iqbal*, 556 U.S. at 678. Rather, Petty simply recounts what Peña said about Petty's spouse's speech. *See* Dkt. 1-8 at 2 (alleging that Peña said: "tell your wife to stay off of posting on social media and remove herself from the CCF board"). In determining whether Petty's spouse's "speech as a whole relates to the public concern such that it is entitled to protection," I must consider "'the content, form, and context of a given statement, as revealed by the whole record.'"

---

[5] Perplexingly, Petty's failure to request a name-clearing hearing is not an argument for dismissal raised in Defendants' briefing. But that should not stop this court from dismissing Petty's procedural due process claim on that basis. *See supra* n.3.

*Modica*, 465 F.3d at 180 (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). As the Fifth Circuit has recognized:

> Since [Petty] is claiming that the [City] retaliated against [him] for [his spouse's] making statements protected by the First Amendment, [he] is required to be specific as to when her statement or statements were made, to whom they were made, whether they were oral or written, and the content of those statements.

*Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 342 (5th Cir. 2003); *see also Carpenter v. Miss. Valley State Univ.*, 807 F. Supp. 2d 570, 597–98 (N.D. Miss. 2011) (granting judgment on First Amendment retaliation claim because "Plaintiff entirely failed to identify the precise speech in which he claims was protected and addressed a matter of public concern"). Petty's failure to identify his spouse's speech is fatal to his First Amendment retaliation claim.[6] Accordingly, Defendants are entitled to dismissal.

* * *

Because Petty fails to state a constitutional claim, I need not reach the parties' arguments concerning qualified immunity and *Monell* liability.

**D.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION**

Having established that Petty fails to state a claim under federal law, I recommend that this court decline to exercise supplemental jurisdiction over Petty's state law breach of contract, intentional tort, and ultra vires claims and

---

[6] To the extent Petty also intends to assert a standalone claim based on spousal association, the Fifth Circuit has considered a nearly identical factual scenario and rejected such an association claim. In *Singletary v. Brumley*, a sheriff asked a deputy to "get his wife straightened out" after the deputy's wife, as a city council member, opposed the sheriff on a local issue. No. 97-30346, 1998 WL 54615, at *6 (5th Cir. Aug. 12, 1998). The Fifth Circuit reversed judgment for the plaintiff, holding that a defendant can only be held liable for violating a right of intimate association if the plaintiff shows "an intent to interfere with the relationship." *Id.* at *7. As in *Singletary*, Petty's "right to the association of marriage was not violated by" Peña's warning that Petty should have his wife stay off social media and leave a local civic board. *Id.* That is because "[f]ar more than that is required to have a valid [intimate association claim]." *Id.* Thus, whether styled as pure First Amendment retaliation or as First Amendment interference with intimate association, Petty fails to state a claim.

9

"instead dismiss [those claims] without prejudice." *See Duncan*, 2024 WL 2819118, at *4 (citing 28 U.S.C. § 1367(c)(3)).

## CONCLUSION

For the reasons discussed above, I recommend that Defendants' motion to dismiss (Dkt. 17) be granted as to Plaintiff's federal procedural due process and First Amendment retaliation claims and that the court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismiss Plaintiff's state law claims without prejudice.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this **29**<sup>th</sup> day of June 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE